UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:

TRIANON CONDOMINIUM
ASSOCIATION, INC.

      Plaintiff,

vs.

QBE INSURANCE CORPORATION,
a foreign corporation,

      Defendant.

_____/

## COMPLAINT

Plaintiff, TRIANON CONDOMINIUM ASSOCIATION, INC. (hereinafter "TRIANON"), by and through its undersigned counsel, hereby files this Complaint against the Defendant, QBE INSURANCE CORPORATION, (hereinafter "QBE") and in support thereof, states:

## GENERAL ALLEGATIONS

1.    This is an action for declaratory judgment, including supplemental relief, breach of contract (actual cash value), breach of contract (replacement cost value), and breach of the implied warranty of good faith and fair dealing, seeking judgment for damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

2.    Pursuant to 28 U.S.C. §1332, this Court has subject matter jurisdiction because the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees, and there is complete diversity of citizenship between the parties.

3.     At all times material hereto, TRIANON was and is a non-profit condominium association and corporation organized and existing under the laws of the State of Florida, and was authorized to do, and is doing business in Palm Beach, Florida.  TRIANON is located at 1200 South Flagler Drive, West Palm Beach, Florida 33401.

4.     At all times material hereto, QBE was and is a foreign corporation and insurance carrier authorized by the State of Florida pursuant to a letter of eligibility to transact insurance and is transacting insurance in Palm Beach, Florida and throughout Florida.

5.     QBE offered to provide property insurance coverage to TRIANON for the twelve month period beginning December 4, 2004, in exchange for a premium of $50,217.00. TRIANON accepted QBE's offer of property insurance coverage and paid the premium of $50,217.00 to QBE.

6.     QBE issued Insurance Policy No. QF3083-05, which provided commercial residential property coverage to TRIANON for the twelve (12) month period commencing December 4, 2004.  True and correct copies of the declaration page and insurance policy (hereinafter the "Insurance Contract") are attached hereto as *Composite Exhibit "A"*.

7.     The intent and purpose of the Insurance Contract is to provide commercial property insurance coverage to its named insured, TRIANON, for the twelve (12) month period commencing on December 4, 2004.

8.     On or about October 24, 2005, Hurricane Wilma struck South Florida, including TRIANON.

9.     On or about October 24, 2005, TRIANON sustained significant hurricane damages to its residential condominium property as a result of Hurricane Wilma.

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLC
250 Australian Avenue South, Suite 500, One Clearlake Centre, West Palm Beach, Florida 33401
Telephone: (561) 653-2900 Facsimile: (561) 820-2542

10.     TRIANON promptly reported its Hurricane Wilma damages to QBE.

11.     Following Hurricane Wilma, QBE partially inspected the damages to TRIANON and without reasonable basis or justification denied the claim.

12.     TRIANON has complied with its obligations under the Insurance Contract.

13.     To date, over three years after Hurricane Wilma, QBE has failed to provide TRIANON with any estimate of damages, has failed to adjust, pay and/or settle TRIANON's claim for hurricane damage, despite its obligations to do so under Chapter, 627.70131, *Florida Statutes,* and the Insurance Contract.

14.     Venue lies in the Southern District of Florida because, among other things, the Insurance Contract was entered into and provides insurance coverage for residential property in Palm Beach County, Florida.

15.     All conditions precedent to the filing of this action have occurred and/or have been waived.

## COUNT I
## DECLARATORY JUDGMENT AGAINST QBE

16.     This is an action by TRIANON against QBE for a declaratory judgment and supplemental relief, the subject matter of which exceeds $75,000 exclusive of interest, costs, and attorneys' fees, pursuant to Chapter 86, *Florida Statutes.*

17.     TRIANON realleges and reavers the allegations contained in paragraphs 1 through 15.

18.     TRIANON seeks a declaratory judgment: (a) that the Insurance Contract is valid and enforceable; (b) that pursuant to the terms and conditions of the Insurance Contract, TRIANON has a valid and enforceable right to coverage, and to a determination of the total

3

amount of all damages TRIANON sustained from Hurricane Wilma notwithstanding QBE's failure to timely adjust, pay and/or settle TRIANON's claim; (c) that pursuant to the Insurance Contract and/or Section 718.111(11), *Florida Statutes*, TRIANON has a right to coverage for damages sustained from Hurricane Wilma to TRIANON's windows and sliding-glass doors; (d) determining the total amount of the loss and damages caused by Hurricane Wilma to TRIANON; (e) that TRIANON be awarded supplemental relief to fully compensate TRIANON for all of its hurricane related damages under Chapter 86, *Florida Statutes*; and (f) a declaration that the Insurance Contract fails to comply with Section 627.701(1)(a-b), *Florida Statutes* and 627.701(4)(a), *Florida Statutes*; therefore, the provision concerning co-insurance and a separate hurricane deductible are void and unenforceable.

19.     QBE's actions have raised doubt and insecurity in TRIANON regarding: the validity, enforceability and scope of the Insurance Contract; the total amount of damages that TRIANON sustained from Hurricane Wilma; QBE's duty to timely adjust, pay and/or settle TRIANON'S claims; TRIANON's right to coverage for damages to its windows and sliding glass doors that sustained damage from Hurricane Wilma; and the validity and enforceability of the co-insurance and separate hurricane deductible provisions of the Insurance Contract.

20.     Paragraphs E(4)(a) and G(3)(c) of the Insurance Contract and Section 627.70131, *Florida Statutes,* require QBE to timely adjust, pay and/or settle TRIANON's claims for the damages it sustained from Hurricane Wilma.   QBE has failed to adjust, pay and/or settle TRIANON's claims.   TRIANON is entitled to a declaratory judgment that the Insurance Contract and Florida Law requires QBE to timely adjust, pay and/or settle TRIANON's hurricane damage claims.

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLC
250 Australian Avenue South, Suite 500, One Clearlake Centre, West Palm Beach, Florida 33401
Telephone: (561) 653-2900 Facsimile: (561) 820-2542

21.     Section 718.111(11)(b)(1-3), *Florida Statutes,* requires that condominium property casualty insurance contracts provide coverage for the components of the building structure, including windows, doors, screens and sliding glass doors, either that were initially installed when the building was built or when the declaration of condominium property requires the Association to insure them.

22.     TRIANON's Declaration of Condominium, Paragraph 8.2 requires the Association to insure all buildings, improvements and all personal property included in the common elements which includes the windows and sliding glass doors.

23.     TRIANON is entitled to a declaratory judgment that the windows and sliding glass doors that sustained damage from Hurricane Wilma are covered under the Insurance Contract.

24.     TRIANON suffered extensive losses and damages from Hurricane Wilma and timely notified QBE of those losses and damages.  QBE has failed to fully adjust the claim and determine the total amount of damages that TRIANON sustained from Hurricane Wilma. TRIANON is entitled to declaratory judgment to determine the total amount of its Hurricane Wilma damages and for supplemental relief to fully compensate TRIANON for its Hurricane Wilma losses and damages.

25.     The Insurance Contract fails to comply with Section 627.701, *Florida Statutes,* because the face of the Insurance Contract does not contain a co-insurance notice as required. Further, the face of the Insurance Contract fails to contain a separate hurricane deductible notice as required and/or fails to comply with the wording and bold faced type size requirements set forth in Section 627.701, *Florida Statutes.*

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLC
250 Australian Avenue South, Suite 500, One Clearlake Centre, West Palm Beach, Florida 33401
Telephone: (561) 653-2900 Facsimile: (561) 820-2542

26.     TRIANON is entitled to a declaratory judgment that the co-insurance and separate hurricane deductible provisions of the Insurance Contract are void and unenforceable because the Insurance Contract does not comply with the requirements set forth in Section 627.701(1)(a-b), *Florida Statutes* and 627.701(4)(a), *Florida Statutes*.

27.     TRIANON's rights regarding: the validity and enforceability of the Insurance Contract; QBE's duty to determine the full amount of TRIANON's losses and damages from Hurricane Wilma and to fully adjust, pay and/or settle TRIANON's claims for losses and damages from Hurricane Wilma; the coverage provided under the Insurance Contract and required to be covered by Section 718.111(11), *Florida Statutes*; and the Insurance Contract's failure to comply with Section 627.701(1)(a-b) and Section 627.701(4)(a), *Florida Statute*, are dependent upon the facts set forth herein or the law applicable to those facts.

28.     TRIANON and QBE have present, actual, adverse and antagonistic interests in the validity and enforceability of the Insurance Contract, the full amount of TRIANON's losses and damages from Hurricane Wilma and QBE's duty to timely fully adjust, pay and/or settle TRIANON's claims for losses and damages from Hurricane Wilma; the coverage provided by the Insurance Contract; the application of Section 718.111(11), *Florida Statutes,* and the property damage coverage provided thereby, and the validity and enforceability of the co-insurance and separate hurricane deductible provision of the Insurance Contract.

29.     TRIANON and QBE's adverse and antagonistic interests are before this Court by proper process. The relief TRIANON seeks is not the mere rendering of legal advice.

30.     TRIANON has a *bona fide*, present and practical need for a declaration of its rights under the Insurance Contract.

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLC
250 Australian Avenue South, Suite 500, One Clearlake Centre, West Palm Beach, Florida 33401
Telephone: (561) 653-2900 Facsimile: (561) 820-2542

31.     TRIANON has retained the undersigned attorneys to represent it in this action and is required to pay them a reasonable fee for their services.

32.     TRIANON is entitled to recover its reasonable attorneys' fees pursuant to Section 627.428, *Florida Statutes*, which provides in pertinent part:

> Upon the rendition of a judgment or decree by any of the Courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

WHEREFORE, TRIANON requests that the Court enter a declaratory judgment (a) that the Insurance Contract is valid and enforceable; (b) that pursuant to the terms and conditions of the Insurance Contract, TRIANON has a valid and enforceable right to coverage and a determination of the total amount of all of the damages TRIANON sustained from Hurricane Wilma notwithstanding QBE's failure to timely adjust, pay and/or settle TRIANON's claim; (c) that pursuant to the Insurance Contract and/or Section 718.111(11), *Florida Statutes*, TRIANON has a right to coverage for damages to TRIANON's windows and sliding-glass doors sustained from Hurricane Wilma; (d) that determines the total amount of the loss and damages caused by Hurricane Wilma to TRIANON; (e) that the Insurance Contract fails to comply with Section 627.701(4)(a), *Florida Statutes*, therefore the provisions concerning co-insurance and a separate hurricane deductible are void and unenforceable; (f) award supplemental relief to fully compensate TRIANON for all of its hurricane related damages under Chapter 86, *Florida Statutes*; and (g) award TRIANON its reasonable attorney's fees pursuant to Section 627.428,

7

*Florida Statutes*, together with taxable costs, prejudgment interest and any other and further relief that the Court deems just, equitable and proper.

**COUNT II**
**BREACH OF CONTRACT AGAINST QBE**
(Actual Cash Value)

33.     This is an action by TRIANON against QBE for damages for breach of the Insurance Contract (actual cash value) which exceeds $75,000 exclusive of interest, costs, and attorney's fees.

34.     TRIANON realleges and reavers the allegations contained in paragraphs 1 through 15.

35.     The Insurance Contract sets forth the rights and obligations of QBE to TRIANON with respect to its claim, including amount other things, the following pertinent terms and conditions:

> E(4)(a).
>
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.
>
> \*          \*          \*
>
> G(3)(c).
>
> You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides…

<u>See</u> Composite Exhibit "A".

8

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLC
250 Australian Avenue South, Suite 500, One Clearlake Centre, West Palm Beach, Florida 33401
Telephone: (561) 653-2900 Facsimile: (561) 820-2542

36.     Pursuant to the terms of the Insurance Contract TRIANON has a right to property coverage for loss or damages caused by Hurricane Wilma.

37.     In or about October, 2005, and at other times following Hurricane Wilma, TRIANON made a claim to QBE for the losses and damage caused from Hurricane Wilma and has requested to be paid the actual cash value for its loss and damages, as provided by the Insurance Contract.

38.     Notwithstanding TRIANON's claim, QBE has not determined the value of the lost or damaged property and has not paid TRIANON any part of the actual cash value due under the Insurance Contract.

39.     QBE materially breached the Insurance Contract by failing to adjust TRIANON's claim and determine the value of its lost or damaged property and by failing to pay TRIANON the actual cash value of the lost or damaged property.

40.     QBE further breached the Insurance Contract by failing to adjust, pay and/or settle TRIANON's actual cash value claim and in doing so, frustrated TRIANON's ability to make the repairs to TRIANON which were caused by Hurricane Wilma.

41.     As a direct and proximate result of QBE's material breach of the Insurance Contract, TRIANON has suffered millions of dollars in damages.

42.     TRIANON has retained the undersigned attorneys to represent it in this action and is required to pay them a reasonable fee for their services.

43.     Section 627.428, Florida Statutes, provides in pertinent part:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contact executed by the insurer, the trial court or, in the event of an appeal

9

in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees for compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

44.    TRIANON is further entitled to recover prejudgment interest pursuant to Section 627.70131, *Florida Statutes.*

WHEREFORE, Plaintiff, TRIANON, demands judgment for compensatory damages and special damages, together with interest, attorney's fees under Section 627.428, *Florida Statutes*, and costs, and other such relief as this Court deems just, equitable and proper.

## COUNT III
## BREACH OF CONTRACT AGAINST QBE
(Replacement Cost Value)

45.    This is an action by TRIANON against QBE for damages for breach of the Insurance Contract (replacement cost value) which exceeds $75,000 exclusive of interest, costs and attorneys' fees.

46.    TRIANON realleges and reavers the allegations contained in paragraphs 1 through 15.

47.    The Insurance Contract sets forth the rights and obligations of QBE to TRIANON with respect to its claim, including amount other things, the following pertinent terms and conditions:

> E(4)(a).
>
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

*          *          *

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLC
250 Australian Avenue South, Suite 500, One Clearlake Centre, West Palm Beach, Florida 33401
Telephone: (561) 653-2900 Facsimile: (561) 820-2542

G(3)(c)

You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides…

See Composite Exhibit "A".

48.    Pursuant to the terms of the Insurance Contract, TRIANON has a right to property coverage for loss or damages caused by Hurricane Wilma.

49.    In or about October, 2005, and at other times following Hurricane Wilma, TRIANON made a claim to QBE for the losses and damage caused from Hurricane Wilma and has requested to be paid the actual cash and replacement cost values for its loss and damages, as provided by the Insurance Contract.

50.    Notwithstanding TRIANON's claim, QBE has not determined the value of the lost or damaged property and has not paid TRIANON any part of the actual cash value and replacement cost value due under the Insurance Contract.

51.    QBE materially breached the Insurance Contract by failing to adjust TRIANON's claim and determine the value of its lost or damaged property and by failing to pay TRIANON the actual cash value and the replacement cost of the lost or damaged property.

52.    QBE further breached the Insurance Contract, and is continuing to do so by failing to fully adjust, pay and/or settle TRIANON's actual cash value claim and, in doing so, frustrated TRIANON's ability to make the repairs necessary for TRIANON to receive reimbursements of its claim on a replacement cost basis, which constitutes yet another breach of the Insurance Contract.

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLC
250 Australian Avenue South, Suite 500, One Clearlake Centre, West Palm Beach, Florida 33401
Telephone: (561) 653-2900 Facsimile: (561) 820-2542

53.     As a direct and proximate result of QBE's breaches of the Insurance Contract, TRIANON has suffered millions of dollars in damages.

54.     TRIANON has retained the undersigned attorneys to represent it in this action and is required to pay them a reasonable fee for their services.

55.     TRIANON is entitled to recover its reasonable attorneys' fees pursuant to Section 627.428, *Florida Statutes*, which provides in pertinent part:

> Upon rendition of a judgment of decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the inured beneficiary a reasonable sum as fees or compensation for the insured's of beneficiary's attorney prosecuting the suit in which the recovery is had.

56.     TRIANON is further entitled to recover prejudgment interest pursuant to Section 627.70131, *Florida Statutes*.

WHEREFORE, Plaintiff, TRIANON, demands judgment against QBE for compensatory damages, and special damages, together with interest, costs and attorneys' fees under Section 627.428, *Florida Statutes*, and other such relief as this Court deems just, equitable and proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF
## GOOD FAITH AND FAIR DEALING

57.     This is an action by TRIANON against QBE for breach of implied warranty of good faith and fair dealing, the subject matter of which exceeds $75,000 exclusive of interest, costs, and attorneys' fees.

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLC
250 Australian Avenue South, Suite 500, One Clearlake Centre, West Palm Beach, Florida 33401
Telephone: (561) 653-2900 Facsimile: (561) 820-2542

58.   TRIANON realleges and reavers the allegations contained in paragraphs 1 through 15.

59.   An implied warranty of good faith and fair dealing is a material term in every Florida contract, including the Insurance Contract.

60.   The Insurance Contract does not specify the permissibility or scope of QBE's conduct in relation to the express terms of the Insurance Contract and is unclear.

61.   The Insurance Contract states:

> **We will determine the value of lost or damaged property or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.**
>
> \*      \*      \*

(Emphasis added). ***See Composite Exhibit "A".***

62.   The Insurance Contract does not define the standards governing QBE's exercise of its discretion nor does it provide standards governing the time-frame within which QBE must adjust or value a claim.

63.   Although the Insurance Contract does not specify the time-frame within which QBE must determine the value of TRIANON's claim, TRIANON reasonably expected QBE to exercise its discretion within a reasonable amount of time given the nature of the loss and the attendant circumstances.

64.   Some four and a half years later, through its delay and failure to adjust TRIANON's claim, QBE continues to deprive TRIANON of the benefits of the Insurance Contract. Following Hurricane Wilma, on October 24, 2005, continuing to the present, QBE has breached the implied covenant of good faith and fair dealing by delaying and failing to

13

reasonably value the losses or damage TRIANON sustained during Hurricane Wilma; delaying and failing to reasonably determine the cost to repair or replace TRIANON's property that was damaged or lost during Hurricane Wilma; delaying and failing to make reasonable efforts to agree with TRIANON as to the value of the lost or damaged property or the cost of its repair or replacement and failing to value and/or fully adjust the loss with TRIANON promptly and reasonably given the attendant circumstances.

65.     QBE's delay and failure to timely adjust TRIANON's claim has frustrated the purpose of the Insurance Contract, frustrated TRIANON's ability to make all of the repairs and comply with other provisions in the policy, made it impossible for TRIANON to "reach agreement with QBE as to the amount of the loss", which is one of the conditions for payment under the policy; and has otherwise disappointed TRIANON's reasonable commercial expectations under the Insurance Contract.

66.     As a direct result of QBE's breaches of the implied warranty of good faith and fair dealing in the Insurance Contract, TRIANON has suffered general compensatory damages in the millions of dollars.  TRIANON has also suffered special damages as it was required to take out loans and incur closing costs and interest to make repairs.

67.     TRIANON is entitled to recover its reasonable attorneys' fees pursuant to Section 627.428, *Florida Statutes*, which provides in pertinent part:

> Upon rendition of a judgment of decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the inured beneficiary a reasonable sum as fees or compensation for

14

Case No.
Trianon Condominium Association, Inc. vs. QBE Insurance Corporation
*Complaint*

the insured's of beneficiary's attorney prosecuting the suit in which the recovery is had.

68.    TRIANON is further entitled to recover prejudgment interest pursuant to Section 627.70131, *Florida Statutes.*

WHEREFORE, TRIANON demands judgment against QBE for compensatory damages and special damages, together with interest, costs and attorneys' fees under 627.428, *Florida Statutes,* and such other relief as this Court deems just, equitable and proper.

### JURY DEMAND

TRIANON demands a trial by jury on all issues so triable in this case.

Dated this _____ day of July, 2010.

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLC.
250 Australian Ave. S., Suite 500
West Palm Beach, FL 33401
Tel. (561) 653-2900
Fax (561) 820-2542
Email drosenbaum@rmjslaw.com
Email jsiracusa@rmjslaw.com
Email jjanssen@rmjslaw.com
Email mdevlin@rmjslaw.com
Email rvaluntas@rmjslaw.com

BY:

DANIEL S. ROSENBAUM
Florida Bar No. 306037
JOHN M. SIRACUSA
Florida Bar No. 0159670
JOSEPH W. JANSSEN
Florida Bar No. 160067
MELISSA A. DEVLIN
Florida Bar No. 0043696
RICHARD VALUNTAS
Florida Bar No. 0151084

# COMMON POLICY DECLARATIONS

**Policy No.**  QF3083-05

**QBE INSURANCE CORPORATION**
Home Office: 1515 Market Street
Philadelpha, PA  19103
Admin. Off: 88 Pine St., NY, NY  10005

**NAMED INSURED:**   TRIANON CONDOMINIUM
ASSOCIATION, INC.
**MAILING ADDRESS:** 1200 SOUTH FLAGLER DRIVE
WEST PALM BEACH      FL      33401

**POLICY PERIOD: From**        12/04/2004     **To**        12/04/2005     at
12:01 A.M. standard time at your mailing address shown above.

**BUSINESS DESCRIPTION:**   Condominium Association

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**                                         **PREMIUM**

| | | |
|---|---|---|
| **Commercial Property Coverage Part** | $ | 50,213.00 |
| **Commercial General Liability Coverage Part** | $ | NOT COVERED |
| **Commercial Crime Coverage Part** | $ | NOT COVERED |
| **Commercial Inland Marine Coverage Part** | $ | NOT COVERED |
| **Boiler and Machinery Coverage Part** | $ | NOT COVERED |
| **Commercial Auto Coverage Part** | $ | NOT COVERED |
| | $ | |
| **TOTAL PREMIUM** | $ | 50,213.00 |
| **SURCHARGES/FEES** | $ | 4.00 |
| **GRAND TOTAL** | $ | 50,217.00 |

Premium shown is payable:$ 50,217.00                    **at inception**

**Forms applicable to all Coverage Parts:**
  IL 00 03 11 85            IL 00 17 11 98           QBIL 0122 08 03

# THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR WINDSTORM WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

COUNTERSIGNED_____ 12-08-04bb _____ **BY** _____
                                   (Date)                              (Authorized Representative)

QBDS-0101 11 02                    Copyright, Insurance Services Office, Inc., 1983, 1984

**EXHIBIT**

**A**

tobbies

Insured Copy

COMMERCIAL PROPERTY
CP 00 17 04 02

# CONDOMINIUM ASSOCIATION COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. – Definitions.**

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

a. **Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, outside of individual units, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure; and

(6) Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

(a) Fixtures, improvements and alterations that are a part of the building or structure; and

(b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.

But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph **A.1.a.(6)** above.

b. **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following:

(1) Personal property owned by you or owned indivisibly by all unit-owners;

(2) Your interest in the labor, materials or services furnished or arranged by you on personal property of others;

(3) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

But Your Business Personal Property does not include personal property owned only by a unit-owner.

c. **Personal Property Of Others** that is:

  (1) In your care, custody or control; and

  (2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

  However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. **Property Not Covered**

  Covered Property does not include:

  a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

  b. Animals, unless owned by others and boarded by you;

  c. Automobiles held for sale;

  d. Bridges, roadways, walks, patios or other paved surfaces;

  e. Contraband, or property in the course of illegal transportation or trade;

  f. The cost of excavations, grading, back filling or filling;

  g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

  (1) The lowest basement floor; or

  (2) The surface of the ground if there is no basement.

  h. Land (including land on which the property is located), water, growing crops or lawns;

  i. Personal property while airborne or waterborne;

  j. Bulkheads, pilings, piers, wharves or docks;

  k. Property that is covered under this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

  l. Retaining walls that are not part of a building;

  m. Underground pipes, flues or drains;

  n. Electronic data, except as provided under Additional Coverages – Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

  o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

  p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

  (1) Are licensed for use on public roads; or

  (2) Are operated principally away from the described premises.

  This paragraph does not apply to:

  (a) Vehicles or self-propelled machines or autos you manufacture or warehouse;

  (b) Vehicles or self-propelled machines, other than autos, you hold for sale;

  (c) Rowboats or canoes out of water at the described premises; or

  (d) Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

  q. The following property while outside of buildings:

  (1) Grain, hay, straw or other crops; or

© ISO Properties, Inc., 2001

CP 00 17 04 02

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs, or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

(1) Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

(5) **Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 50,000 |
| Amount of Loss Payable | $ | 49,500 |
| | ($50,000 − $500) | |
| Debris Removal Expense | $ | 10,000 |
| Debris Removal Expense Payable | $ | 10,000 |

($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

**Example #2**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 80,000 |
| Amount of Loss Payable | $ | 79,500 |
| | ($80,000 − $500) | |
| Debris Removal Expense | $ | 30,000 |
| Debris Removal Expense Payable | | |
| Basic Amount | $ | 10,500 |
| Additional Amount | $ | 10,000 |

© ISO Properties, Inc., 2001

The basic amount payable for debris removal expense under the terms of Paragraph (3) is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph (4), because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph (4). Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary for you to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage.

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

    (a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

    (b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

    (a) We will not pay for the Increased Cost of Construction:

        (i) Until the property is actually repaired or replaced, at the same or another premises; and

        (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    (b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the same premises.

    (c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in e.(6) of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

(1) Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

(3) The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage – Electronic Data, subject to the following:

    (a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

    (b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Electronic Data includes Collapse as set forth in that form.

 © ISO Properties, Inc., 2001

(c) If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Electronic Data.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, repair or replace that system.

(4) The most we will pay under this Additional Coverage – Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

5. **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

a. **Newly Acquired Or Constructed Property**

(1) **Buildings**

You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2) **Your Business Personal Property**

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

(i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

(ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

(iii) Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

(i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

(ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

   © ISO Properties, Inc., 2001   CP 00 17 04 02   □

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered – Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-Premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

© ISO Properties, Inc., 2001

(2) This Extension does not apply to property:

   (a) In or on a vehicle; or

   (b) In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

(3) The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f. Non-Owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

   (a) The trailer is used in your business;

   (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

   (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

   (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

   (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Bldg. 1: | $ | 60,000 |
| Limit of Insurance – Bldg. 2: | $ | 80,000 |
| Loss to Bldg. 1: | $ | 60,100 |
| Loss to Bldg. 2: | $ | 90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$ 60,100
– 250
$ 59,850 Loss Payable – Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139,850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

Loss to Bldg. 1: $70,000
(exceeds Limit of Insurance plus Deductible)
Loss to Bldg. 2: $90,000
(exceeds Limit of Insurance plus Deductible)
Loss Payable – Bldg. 1: $60,000
(Limit of Insurance)
Loss Payable – Bldg. 2: $80,000
(Limit of Insurance)
Total amount of loss payable: $140,000

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Unit-Owner's Insurance**

A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary, and not to contribute with such other insurance.

**7. Vacancy**

a. **Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

© ISO Properties, Inc., 2001

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

   (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

   (ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

   (a) Vandalism;

   (b) Sprinkler leakage, unless you have protected the system against freezing;

   (c) Building glass breakage;

   (d) Water damage;

   (e) Theft; or

   (f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**8. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c.** and **d.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

**c.** Glass at the cost of replacement with safety glazing material if required by law.

**9. Waiver Of Rights Of Recovery**

We waive our rights to recover payment from any unit-owner of the condominium that is shown in the Declarations.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

(4) Subtract the deductible from the figure determined in Step **(3)**.

© ISO Properties, Inc., 2001

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

| When: | | | |
|---|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 100,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

Step (1):  $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):  $100,000 ÷ $200,000 = .50

Step (3):  $40,000 x .50 = $20,000

Step (4):  $20,000 - $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| When: | | | |
|---|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 200,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b.  If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

| When: | | | |
|---|---|---|---|
| The value of property is: | | |
| Bldg. at Location No. 1 | $ | 75,000 |
| Bldg. at Location No. 2 | $ | 100,000 |
| Personal Property at Location No. 2 | $ | 75,000 |
| | $ | 250,000 |
| The Coinsurance percentage for it is | | 90% |

The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is $ 180,000

The Deductible is $ 1,000

The amount of loss is:
Bldg. at Location No. 2 $ 30,000

Personal Property at Location No. 2 $ 20,000
$ 50,000

Step (1):  $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):  $180,000 ÷ $225,000 = .80

Step (3):  $50,000 x .80 = $40,000

Step (4):  $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

2. **Mortgageholders**

a.  The term mortgageholder includes trustee.

b.  We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c.  The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d.  If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1)  Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2)  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3)  Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e.  If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

© ISO Properties, Inc., 2001

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

### 1. Agreed Value

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

c. The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

### 2. Inflation Guard

a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

| If: | | | |
|---|---|---|---|
| The applicable Limit of Insurance is | $ | 100,000 |
| The annual percentage increase is | | 8% |
| The number of days since the beginning of the policy year (or last policy change) is | | 146 |
| The amount of increase is $100,000 x .08 x 146 ÷ 365 = | $ | 3,200 |

### 3. Replacement Cost

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

b. This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence; or

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

Under the terms of this Replacement Cost Optional Coverage, personal property owned indivisibly by all unit owners, and the property covered under Paragraph A.1.a.(6) of this Coverage Form, are not considered to be the personal property of others.

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in e.(2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

4. **Extension Of Replacement Cost To Personal Property Of Others**

a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

b. With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

## H. Definitions

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

© ISO Properties, Inc., 2001    CP 00 17 04 02

# COMMERCIAL PROPERTY COVERAGE PART
## DECLARATIONS PAGE

**POLICY NO:**  QF3083-05                **EFFECTIVE DATE:**        12/04/2004

**NAMED INSURED:**   TRIANON CONDOMINIUM
ASSOCIATION, INC.

## DESCRIPTION OF PREMISES

| PREM BLDG LOCATION | | | CONSTRUCTION | OCCUPANCY |
|---|---|---|---|---|
| 1 | Var | 1200 South Flagler Drive | FR | Condominium |
| | | West Palm Beach, Palm Beach County, FL 33401 | | |

## COVERAGES PROVIDED INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN

| PREM | BLDG | COVERAGE | LIMIT OF INSURANCE | COVERED CAUSES OF LOSS | COINSURANCE* | RATES |
|---|---|---|---|---|---|---|
| 1 | 1 | Building | 13,247,000 | Special | 90% | Incl |
| 1 | 1 | Contents | 45,000. | Special | 90% | Incl |
| 1 | 2 | Carports | 85,000. | Special | 90% | Incl |

*IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

## OPTIONAL COVERAGES  APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW

| PREM | BLDG | COVERAGE | AGREED VALUE EXPIRATION DATE | AMOUNT | VALUE OPTION | INCLUDING "STOCK" |
|---|---|---|---|---|---|---|
| 1 | 1 | Building | | | RC | |
| 1 | 1 | Contents | | | RC | |
| 1 | 2 | Carports | | | RC | |

| INFLATION GUARD (Percentage) | *MONTHLY LIMIT OF INDEMNITY (Fraction) | *MAXIMUM PERIOD OF INDEMNITY (Y/N) | *EXTENDED PERIOD OF INDEMNITY (Days) |
|---|---|---|---|

*APPLIES TO BUSINESS INCOME ONLY.

## MORTGAGE HOLDER
PREM BLDG MORTGAGE HOLDER NAME AND MAILING ADDRESS

## DEDUCTIBLE

| PREM | BLDG | COVERAGE | BASIC - GP I | BASIC - GP II | BROAD | SPECIAL |
|---|---|---|---|---|---|---|

# SEE MULTIPLE DEDUCTIBLE FORM

## FORMS APPLICABLE
**TO ALL COVERAGES:**
See Register

**TO SPECIFIC PREMISES/COVERAGES:**
PREM BLDG COVERAGE(S)                                                    FORM NUMBER

Insured Copy

## DECLARATIONS (CONTINUED) - FORMS REGISTER

| Named Insured | Policy Number |
|---|---|
| ז־ 'NON CONDOMINIUM | QF3083-05 |

| Producer | Effective Date |
|---|---|
| SMITH WATSON PARKER | 12/04/2004 |

**Line of Business:** Property

| | | | |
|---|---|---|---|
| CP 00 17 04 02 | CP 00 90 07 88 | CP 01 25 06 95 | CP 01 91 01 04 |
| CP 04 05 04 02 | CP 10 30 04 02 | CP 10 35 06 95 | IL 01 75 07 02 |
| IL 02 55 07 02 | IL 09 35 07 02 | IL 09 58 11 02 | QBCP0122(11/02) |
| QBCP0123(11/02) | | | |

SY 02 01 95

# COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

**POLICY NO.**   QF3083-05

**NAMED INSURED:**   TRIANON CONDOMINIUM
ASSOCIATION, INC.

## DESCRIPTION OF PREMISES

| PREM | BLDG | LOCATION | | CONSTRUCTION | OCCUPANCY |
|------|------|----------|---|-------------|-----------|
| 1 | Var | See Page One | | | |

## COVERAGES PROVIDED INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN

| PREM | BLDG | COVERAGE | LIMIT OF INSURANCE | COVERED CAUSES OF LOSS | COINSURANCE* | RATES |
|------|------|----------|--------------------|------------------------|--------------|-------|
| 1 | 3 | Pool & Equipment | 79,000. | Special | 90% | Incl |

*IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

## OPTIONAL COVERAGES   APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW

| PREM | BLDG | COVERAGE | AGREED VALUE EXPIRATION DATE | AMOUNT | VALUE OPTION | INCLUDING "STOCK" |
|------|------|----------|------------------------------|--------|--------------|-------------------|
| 1 | 3 | Pool & Equipment | | | RC | |

| INFLATION GUARD (Percentage) | MONTHLY LIMIT OF INDEMNITY (Fraction) | MAXIMUM PERIOD OF INDEMNITY (Y/N) | *EXTENDED PERIOD OF INDEMNITY (Days) |
|------------------------------|----------------------------------------|-----------------------------------|--------------------------------------|
| | | | |

*APPLIES TO BUSINESS INCOME ONLY.

## MORTGAGE HOLDER
PREM  BLDG  MORTGAGE HOLDER NAME AND MAILING ADDRESS

## DEDUCTIBLE

| PREM | BLDG | COVERAGE | BASIC - GP I | BASIC - GP II | BROAD | SPECIAL |
|------|------|----------|--------------|---------------|-------|---------|

# SEE MULTIPLE DEDUCTIBLE FORM

## FORMS APPLICABLE TO SPECIFIC PREMISES/COVERAGES:
PREM  BLDG  COVERAGE(S)                                                          FORM NUMBER

CP 12 05 11 85            Copyright, ISO Commercial Risk Services, Inc., 1984, 1991

Insured Copy

POLICY NUMBER:  COMMERCIAL PROPERTY
QBCP 0123 11 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MULTIPLE DEDUCTIBLE FORM — FLORIDA
## (FIXED DOLLAR DEDUCTIBLES)

This endorsement modifies insurance provided under the following:
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
TOBACCO SALES WAREHOUSES COVERAGE FORM

### SCHEDULE*

The Deductibles applicable to any one occurrence are shown below:

| Premium No. | Bldg. No. | Deductible | Covered Causes Of Loss** |
|---|---|---|---|
| 1 | ALL | $2,500. | (2) |

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in he Declarations.

**For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) Of Loss to which that deductible applies (or enter the description):
(1) All Covered Causes Of Loss
(2) All Covered Causes Of Loss except Windstorm Or Hail
(3) All Covered Causes Of Loss except Theft
(4) All Covered Causes Of Loss except Windstorm Or Hail and Theft
(5) Windstorm Or Hail
(6) Theft

The following is added to the **Deductible** Section:

A.  If this policy provides a Hurricane Deductible, then any deductible stated in this endorsement, for Windstorm Or Hail or for a Covered Cause Of Loss other than Windstorm Or Hail, does not apply to loss or damage caused by hurricane, with respect to the property to which the Hurricane Deductible applies.

B.  The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm Or Hail Deductible provided elsewhere in this policy.

C.  In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause Of Loss, shown in the Schedule above or in the Declarations, will apply.

POLICY NUMBER:

COMMERICAL PROPERTY
QBCP 0122 11 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA HURRICANE DEDUCTIBLE
# (RESIDENTIAL RISKS)

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE\***

| Premises No. | Bldg. No. | Hurricane Deductible (subject to a $500 minimum deductible per occurrence) |
|---|---|---|
| 1 | ALL | $269,120. |

The Hurricane Deductible, as shown in the Schedule, applies to loss or damage to Covered Property caused directly or indirectly by Hurricane, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.  If loss or damage from a covered weather condition other than Hurricane occurs, and that loss or damage would not have occurred but for the Hurricane, such loss or damage shall be considered to be caused by Hurricane and therefore part of the Hurricane occurrence.

The Hurricane Deductible applies whenever there is an occurrence of Hurricane.  Under the terms of this endorsement, a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC).  The Hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC, and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

With respect to Covered Property at a location identified in the Schedule, the Hurricane Deductible is the only deductible that applies to loss or damage caused by Hurricane.  If a windstorm is not declared to be a hurricane and there is loss or damage to Covered Property, the applicable deductible is the same deductible that applies to Fire.

\*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

QBCP 0122 11 02

Page 1 of 2

As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of ~urance (for example, each building or personal .operty in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) of Insurance are shown in the Declarations.

## HURRICANE DEDUCTIBLE CLAUSE

We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition, Agreed Value Optional Coverage, Additional Condition — Need for Adequate Insurance or Additional Condition — Need For Full Reports.

QBCP 0122 11 02

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President